Filed 4/7/23 In re A.C. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re A.C. et al., Persons Coming Under the Juvenile Court Law. | |
| FRESNO COUNTY DEPARTMENT OF SOCIAL SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> ASHLEY C. <br><br> Defendant and Appellant. | F085089 <br><br> (Super. Ct. No. 20CEJ300364) <br><br><br> **OPINION** |

-ooOoo-

## THE COURT[*]

APPEAL from an order of the Superior Court of Fresno County. Elizabeth Egan, Judge.

Roshni Mehta, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

-ooOoo-

---

[*]    Before Franson, Acting P. J., Peña, J. and Meehan, J.

Appellant Ashley C. (mother) appealed from the juvenile court's September 27, 2022, order terminating her parental rights (Welf. & Inst. Code, § 366.26)[1] to her now five-year-old son, Anthony C., and two-year-old son, A.C. After reviewing the juvenile court record, mother's court-appointed counsel informed this court she could find no arguable issues to raise on mother's behalf. This court granted mother leave to personally file a letter setting forth a good cause showing that an arguable issue of reversible error exists. (*In re Phoenix H.* (2009) 47 Cal.4th 835, 844.)

Mother filed a letter but failed to address the termination findings or orders or set forth a good cause showing that any arguable issue of reversible error arose from the section 366.26 hearing. (*In re Phoenix H.*, *supra*, 47 Cal.4th at p. 844.) Consequently, we dismiss the appeal.

## PROCEDURAL AND FACTUAL STATEMENT

In November 2020, the Fresno County Department of Social Services (department) took then three-year-old Anthony and newborn A.C. into protective custody after A.C. tested positive for methamphetamine and the maternal grandmother failed to abide by the safety plan that would have allowed her to have custody of the children. Although mother tested negative for drugs at the time of A.C.'s birth, she admitted using methamphetamine daily for the first seven months of her pregnancy. The whereabouts of Anthony's father were unknown and A.C.'s father was living in Mexico. The fathers were alleged and remained so throughout the proceedings. The children were placed together in foster care.

In January 2021, the juvenile court exercised its dependency jurisdiction over the children and ordered mother to participate in parenting, substance abuse, domestic violence and mental health services. Services were not ordered for the alleged fathers.

---

[1]     Statutory references are to the Welfare and Institutions Code.

The juvenile court provided mother reunification services to the 12-month review hearing in February 2022. Although she regularly visited the children and was loving and attentive to them, her visits remained supervised and she was not benefitting from services. She did not appear to understand appropriate parenting techniques and was easily overwhelmed during the one-hour visits with the children. She relied heavily on the care provider for making decisions regarding them.

On February 22, 2022, the juvenile court terminated reunification services and set a section 366.26 hearing for June 21, 2022. The department recommended the court terminate parental rights and free the children for adoption with their prospective adoptive mother.

On June 21, 2022, the juvenile court appointed a guardian ad litem (GAL) for mother and set the matter for a contested hearing on September 27, 2022.

On September 27, 2022, mother asked the juvenile court to select a legal guardianship for the children instead of adoption. Her attorney argued mother had a beneficial parent/child relationship with the children. She regularly and consistently visited them, and it would be detrimental to terminate her parental rights. Counsel acknowledged A.C. did not recognize mother and did not have that relationship with her but argued he was probably confused by his multiple placements. Anthony, on the other hand, knew she was his mother and had a connection with her. Mother's GAL pointed out that Anthony was very excited to see mother at visitation and was attached to her. He loved her and told her so. On that evidence, the GAL argued it would be detrimental to terminate mother's parental rights. Minors' counsel and county counsel pointed out that Anthony's excitement about seeing mother at visits had more to do with the gifts that she brought than with his relationship with her.

The juvenile court found the children were likely to be adopted and the parent/child beneficial relationship did not exist and terminated parental rights. In ruling, the court stated:

3.

"Mother has argued that the parent/child relationship with the children is of such benefit to the children that it would be detrimental to [them] to terminate her parental rights. The [c]ourt finds the children have been out of mother's care since late November 2020. Visitation with [mother] has been consistent. The report of the social worker states mother consistently visited the boys and made an effort to engage with them. Mother's engagement … relies heavily on bringing them an abundance of toys and snacks. In the family reunification period, mother was advised not to bring toys and gifts, but to interact with the boys. In the addendum report it is noted that mother continues to bring toys and gifts. Mother did recognize the choking hazard and did not let them play with those pieces in the inappropriate age game. Visits have been reported to be busy and appropriate. As the youngest child stated, he does not know [mother], he joined in with his sibling and acts without any concerns. Anthony has remarked to the social worker that he likes visits with Ashley, as he refers to [mother], and he also stated that, as described earlier, that he likes that she buys them stuff."

"Based on the reports, it appears that the relationship is one of a visitor or a friend. The children have spent a significant part of their lives outside mother's care, and it has been observed by the social worker that interactions are positive, but they do not reflect a substantial emotional relationship. The children have not exhibited any emotional response when visits are over during the pendency of the case. The [c]ourt recognizes that contact with the parent may confirm some accompanying benefit to the children. The [c]ourt must also look whether there is a substantial emotional attachment from the child to the parent. The [c]ourt does not find the relationship from the children toward this parent is more than of a friendly relationship. The [c]ourt finds that the beneficial parent/child exception has not been met by a preponderance of the evidence and the harm of losing the parent/child relationship with mother does not outweigh the permanence of a stable adoptive home. [¶] The [c]ourt finds it would not be detrimental to the children to terminate parental rights, as they have not exhibited any behaviors demonstrating that it would be harmful to their emotional well-being."

## DISCUSSION

An appealed-from judgment or order is presumed correct. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) It is the appellant's burden to raise claims of reversible error or other defect and present argument and authority on each point made. If the

appellant fails to do so, the appeal may be dismissed. (*In re Sade C.* (1996) 13 Cal.4th 952, 994.)

At a termination hearing, the juvenile court's focus is on whether it is likely the child will be adopted and if so, the court is required to order termination of parental rights. (*In re Marilyn H.* (1993) 5 Cal.4th 295, 309.) If, as in this case, the child is likely to be adopted, the juvenile court must terminate parental rights unless the parent proves there is a compelling reason for finding that termination would be detrimental to the child under any of the circumstances listed in section 366.26, subdivision (c)(1)(B).

Mother's trial counsel argued unsuccessfully the juvenile court should apply the beneficial parent-child relationship exception to adoption. The beneficial parent-child relationship exception applies if termination of parental rights would be detrimental to the child because the parent has "maintained regular visitation and contact with the child and the child would benefit from continuing the relationship." (§ 366.26, subd. (c)(1)(B)(i).) A parent asserting this exception must show he or she "occupies a parental role in the child's life, resulting in a significant, positive, emotional attachment between child and parent." (*In re C.F.* (2011) 193 Cal.App.4th 549, 555.)

Mother does not argue the juvenile court erred in finding the children were likely to be adopted or in finding the beneficial parent-child relationship exception did not apply. Rather, she faults the department for not investigating why A.C. tested positive for methamphetamine when she did not, and not allowing the maternal grandmother to retain custody of the children. She contends there were no safety concerns regarding the suitability of the maternal grandmother's home and her ability to safely care for the children. Mother also asserts that she has a learning disability and speech impediment that the department failed to accommodate.

By the time a case reaches the section 366.26 hearing, many issues, including the decisions to remove a child from parental custody and not place the child with a relative and the appropriateness of services provided to the parent are no longer cognizable.

Here, the children were removed in November 2020 because mother was using methamphetamine and the maternal grandmother violated the safety plan by drinking alcohol. Any issues stemming from those rulings were appealable from the dispositional order made in January 2021. Since mother did not appeal, she forfeited those issues and is precluded from raising them on this appeal. Similarly, mother had a year from the court's order in January 2021 providing her reunification services to its order in February 2022 terminating services to complain that the services provided by the department did not accommodate her learning disability and speech impediment and therefore were not reasonable. Yet, she did not. Consequently, she has also forfeited that issue on appeal.

Since the issues mother attempts to raise are forfeited and she does not raise any issues pertinent to the section 366.26 hearing, we conclude she failed to make a good cause showing that an arguable issue of reversible error exists. Further, though we are not required to do so, we have reviewed the record as it relates to the termination hearing and have found no arguable issues. Consequently, we dismiss the appeal.

## DISPOSITION

This appeal is dismissed.